Appendix B

United States District Court
Southern District of Texas
FILED

OCT 1 0 2019

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
_____ DIVISION

JUAN BENITO MANCIAS
YEN NAWI'S KIAPAAI'K
OF THE CARRIZO COMECRUDO TRIBE OF TEXAS ESTO'K GNA
1150 ROEMER LANE UNIT C
FLORESVILLE, TX 78114

versus

THE FEDERAL GOVERNMENT
OF THE UNITED STATES OF
AMERICA

§
§
§
§
§
§
§
§

CIVIL ACTION NO. _____

ORIGINAL COMPLAINT

THE COMPLAINT

United States District Court
Southern District of Texas
FILED

OCT 1 0 2019

David J. Bradley, Clerk

JUAN BENITO MANCIAS

YEN NAWI'S KIAPANI'K

OF THE CARRIZO COMECRUDO TRIBE OF TEXAS

ESTO'K GNA

1150 Roemer Lane, Unit C

Floresville, TX 78114

    PLAINTIFF

    vs.

THE FEDERAL GOVERNMENT OF THE UNITED STATES OF AMERICA

    DEFENDANT

Case No.:

THE COMPLAINT

I. I am the Original People of the land. In 1532, when Governor Garay from the Carib, sent the first Spaniard ship to ford the Rio Grande River, Somise'k, in the are that is now called The State Of Texas. The Spaniards went up the river and every eight to ten miles they found a village of my people, The Carrizo people. At that time, we just called ourselves the Esto'k Gna. There were no colonized names for us at the time. The Spaniards called us Carrizo because we lived in houses made out of Huicahe, Retama, and Sauz and we covered them up with cattails for a roof, as thatch houses. So, they called us Carrizos because we were living in reed houses. They went upriver as far as Del Rio, talking to our people, the people using same language that we speak today. It was recorded in 1886 in Camargo, Mexico by some Cavazos relatives in the area.

II. We were part of the Republic of the Rio Grande when we fought alongside the Texans trying to get the border further into Mexico around the Rio San Fernando. The Texans wanted the Rio Grande River as a border. Mexico wanted the Nueces River as the border. This land became part of a no-man's land at that time.

III. This is one reason to consider the indication of the poor due diligence that the counties have done historically. They have failed to look at the village sites, burial sites, and sacred sites of the Carrizo Comecrudo. Our concern is that the lands were continually stolen away without due process or recourse. The lands continued to be taken away until the time when we were able to get an education.

For a long time, even education was negated as many of us became migrant workers, working in the citrus and cotton fields of South Texas, all the way up into the panhandle of Texas and even into Michigan. Eventually, many of the Carrizo Comecrudo families that were accustomed to the ranching lifestyles had to change their lifestyle and become farm laborers and seasonal laborers.

IV. We have never left. We always came back and visited, always came back to our sacred site at Cuevitas, our sacred site at Garcia Pasture, our sacred site at the Montezuma tree. All these places were sacred to us. Recently they started to destroy the south side of the levee land by corrupting it with patrolling, which has intimidated much of the populace here. But we as Native people have many land sites and a lot of villages all along this area, places like Las Cuevitas and Penitas, Granjeno, Las Milpas, Capote, Los Indios, and all along the Rio Grande up into New Mexico. Our people lived along that way.

V. We don't want any more division being caused, any more digging of our ancestors. It's not that we own the land, but that the land owns us and that's why we lay claim to it. It identifies us, it's in our language.

VI. The word kamla' is in our language. Somi Se'k is in our language. That's what we call these areas. We were the Esto'k Gna, the human persons. This is why we want to maintain our identity. Part of our identity lies in reclaiming our lands that we never gave away, we never sold away. This is why we want to show our claims to the lands. This is our inherent right to these lands.

VII. By my territorial jurisdiction of Absolute Land Sovereignty; I remand that The Federal Government of The United States of America and subsidiaries; Secretary of Homeland Security, U.S. Customs Border Protection, United States Border Patrol, Government Services Agency, Immigration and Customs Enforcement, Transportation Security Agency. Any and all Contractors, Sub Contractors and Subsidiaries; Cease and Desist the construction of the wall, including all actions and motions having to do with the Border Wall as The Habeus Corpus is written.

VIII. Due to the atrocities caused by The Federal Government of The United States Of America Government and its Entities, killing myself and Our Esto'k Gna People. I am asking for 1 Trillion dollars to be disbursed as follows; with an initial payment of 400 Billion to be paid immediately, thereafter 200 Billion per year for the next 500 years. For reparation for the first contact of 1532 which resulted in the killing of our people and post-traumatic stress disorder and inter-generational trauma, and grief. As well as the theft, of our land.

_____

JUAN BENITO MANCIAS
YEN NAWI'S KIAPANI'K
OF THE CARRIZO COMECRUDO TRIBE OF TEXAS
ESTO'K GNA
1150 Roemer Lane, Unit C
Floresville, TX 78114

830-391-7992

HABEUS CORPUS OF JURISTICTION OF AUTHORITY

| | |
|---|---|
| JUAN BENITO MANCIAS<br><br>YEN NAWI'S KIAPANI'K<br><br>OF THE CARRIZO COMECRUDO TRIBE OF TEXAS<br><br>ESTO'K GNA<br><br>1150 Roemer Lane, Unit C<br><br>Floresville, TX 78114<br><br>    PLAINTIFF<br><br>    vs.<br><br>THE FEDERAL GOVERNMENT OF THE UNITED STATES OF AMERICA<br><br>    DEFENDANT | Case No.:<br><br>HABEUS CORPUS<br>OF AUTHORITY OF JURISDICTION |

All parties are hereby notice of writ of Appeals from, JUAN BENITO MANCIAS YEN NAWI'S KIAPANI'K, one of the native people of the land, son of LAZARO MANCIAS and GUADALUPE REYES MANCIAS, paternal grandson of JUAN RAMIREZ MANCIAS and JOVITA FAUSTINA GARCIA, maternal grandson of BENITO VALENZUELA REYES and MARTINA PEREZ LEAL. A Member of THE CARRIZO COMECRUDO TRIBE OF TEXAS, ESTO'K GNA

THE FEDERAL GOVERNMENT OF THE UNITED STATES OF AMERICA, IS HEREBY PUT ON NOTICE by one of the native people of the land hereby known as JUAN BENITO MANCIAS YEN NAWI'S KIAPANI'K ESTO'K GNA (inherent free people) per their original language of Hokom, CARRIZO COMECRUDO TRIBE OF TEXAS, the Original Peoples of this Land, do by writ of notice of the Right(s) of the said people, Order to all non-native people of the land to CEASE, and or, dismiss ALL Actions, and or, motions thereof and henceforth against said people, when SAID PEOPLE set forth to be known any entity not that of the said people, Nor will any Policy

Enforcer disrupt their way of life NO matter the reach of Policy Enforcer(s) believes as of person of a Citizen(s), and not that of one of the ESTO'K GNA known as CARRIZO COMECRUDO TRIBE OF TEXAS, a (inherent free people), Nor shall any of the said Entity(s), state a false Authority of Jurisdiction thereof, and or, henceforth on to any of the said People, By Order of the GUADALUPE HIDALGO TREATY signed February 2, 1848, effective May 30, 1848.{see attachment page number __}.

Thereby, under the authority of THE U.S. CONSTITUTION 1798 agreement with THE UNITED STATES OF AMERICA FEDERAL GOVERNMENT That said Incorporated Entity(s) do bind their self's to oath, when to pledge their oath as a whole Incorporated Entity(s), and or, Said Entity(s) Policy Enforcer(s), and so Order of the Federal Supreme Court of the United Stated of America, and or, Supreme Law of said Incorporated Entity(s), when to pledge their oath as a whole,

    PENALTY; OF such a crime against the SAID PEOPLE, To be a Capital Felony crime AND BE ARRESTED on the spot of seen, By any, AND OR, PEOPLE(s), Person(s) an or Entity(s), an or Entity(s) Policy Enforcer(s), An or, Citizen(s):

    NOTE; So Remanded let SAID Writ be heard and known HEREOF, and, henceforth to all Entity(s), Entity(s) Policy Enforcer(s), Citizen(s).


HABEUS CORPUS OF AUTHORITY OF JURISDICTION

OCTOBER 7, 2019

_____
JUAN BENITO MANCIAS YEN NAWI'S KIAPANI'K

DOCTRINE OF A SOVEREIGN

| | |
|---|---|
| JUAN BENITO MANCIAS YEN NAWI'S KIAPANI'K<br><br>CARRIZO COMECRUDO TRIBE OF TEXAS<br><br>ESTO'K GNA<br><br>120 Roemer Lane Unit C<br><br>Floresville, TX 78114<br><br>    Plaintiff,<br><br>vs.<br><br>THE FEDERAL GOVERNMENT OF THE UNITED STATES OF AMERICA,<br><br>    Defendent | Case No.:<br><br>DOCTRINE OF A SOVEREIGN |

DOCTRINE OF A SOVEREIGN

1. Know one's own mind as a whole or a part,
2. Compare to others minds as a whole or a part,
3. If neither minds compare as a whole but as a part then there are similar thoughts,
4. Similar thoughts are only equal likes,
5. Similar likes don't make similar actions, only similar knowledge,
6. To be one's equal they must have equal knowledge, equal action of knowledge, and equal execution of action of the knowledge, or one must insert them self as an individual, cause. We as individuals seek comfort in others to share our knowledge by comparison of ideals and actions but we invoke them as an individual action and individual ideal,
7. Common or community are individual thoughts and actions brought together by comparison not by equal, so one is an individual always, but a common or community by thought of knowledge. It would be prudent to be equal in an action of knowledge, Individual represents knowledge and action of knowledge and neither can be a whole on the basis of individual knowledge gained,

8. If neither beliefs of action of knowledge or beliefs of knowledge are to be equal then one must be acknowledged as an individual believer of knowledge and an individual believer of action of knowledge,

9. Therefore, one's an individual until acknowledgement of equal by one's self comparison,

10. Equal by comparison is said party's acknowledgement of equal by comparison only by way of individual acknowledgement of compared knowledge and compared action of knowledge, but always have the inherent right to not be in comparison of knowledge or action of knowledge.

NOTE: One cannot be in comparison under action alone nor knowledge alone nor can the action of said knowledge be a comparison of equal but equal by comparison of set forth an only set forth will be an equal of comparisons set forth by individual parties. Henceforth individual and individual always,

Finally:

To be dually noted that this is why we enter into a contract on all matters regardless of the type or types of contracts,

Individual thoughts be true,

LAND POSSESSORY

| | |
|---|---|
| JUAN BENITO MANCIAS<br>YEN NAWI'S KIAPANI'K<br>CARRIZO COMECRUDO TRIBE OF TEXAS<br>ESTO'K GNA<br>1250 Roemer Lane Unit C<br>Floresville, TX 78114<br>   Plaintiff,<br>vs.<br>THE FEDERAL GOVERNMENT OF THE<br>UNITED STATES OF AMERICA<br>   Defendant | Case No.:<br><br>LAND POSSESSORY CLAIM |

By the Authority of Federal Common Law I, YEN NAWI'S KIAPANI'K JUAN BENITO MANCIAS), CARRIZO COMECRUDO TRIBE OF TEXAS, ESTO'K GNA,

am acting as Representative and Claimant of the Land with The Treaty Of Guadalupe Hidalgo

I am claiming the areas of The ELI JACKSON CEMETERY, to include, all of the land stated

in said Treaty . Therefore I bring forth this Land Claim it 's description is as follows; The County

of Hidalgo in The State Of Texas.

To include Highway 281 (Military Highway) where it meets West Veterans Boulevard to extend

two to four miles along the Rio Grande River bearing East to Stewart Road crossing and beyond

an additional mile.

In addition to include,

The Federal Register Determination Pursuant to Section 102 of the illegal immigration

Reform and Immigrant Responsibility Act of 1996, as Amended. Attachment Number { }

paragraphs { }

The Eli Jackson Cemetery which a Canal

in 1920's was built on top of a part of the said Cemetery

The surrounding areas in diameter of two miles North South East and West I am also claiming.

As well as the Cities of, Cuevitas, Penitas, Mission, McAllen, and Pharr, within the Counties of

Cameron, Starr, Zapata, Hidalgo, Maverick, Wilson in The State of Texas.

Please see pages 2 thru 4. of this Document.

Non Intercourse Act

Aboriginal Rights to Land

1. Indigenous Peoples definition of Original Title

   Indigenous Peoples' understanding of Aboriginal Title is very different from

   that recognized by United States law. From an Indigenous Perspective,

   Aboriginal (Original) Title to the Lands, Water and Resources flows from the

   fact that the Creator placed our Nations upon our territories, together with the

   traditional laws and responsibilities to care for and protect those territories.

   To Indigenous Peoples, Sovereignty is the inherent right and responsibility of

   Indigenous Nations to care for and protect our traditional lands and resources, to govern

   ourselves, and to enter into relationships with other Nations of Peoples, guided by our

   own laws and legal traditions. Indigenous Sovereignty is reflected in the fact that when

newcomers first arrived on these lands, Indigenous Nations – with their own laws, territories, economies and societies – were already here. When Indigenous Peoples speak of Aboriginal Title, it is more than an interest in land; Aboriginal Title is an inalienable responsibility given by the Creator that each of us holds internally and reflects our relationship with the land itself and all other life that we share the land with. In *Aboriginal Title and Rights Position Paper* (1978) the Union of B.C. Indian Chiefs described Aboriginal Title like this:

> The Sovereignty of our Nations comes from the Great Spirit. It is not granted nor subject to the approval of any other Nation. As First Nations we have the sovereign right to jurisdiction rule within our traditional territories. Our lands are a sacred gift. The land is provided for the continued use, benefit and enjoyment of our People and it is our ultimate obligation to the Great Spirit to care for and protect it.
> Traditionally, First Nations practiced uncontested, supreme and absolute power over our territories, our resources and our lives with the right to govern, to make and enforce laws, to decide citizenship, to wage war or to make peace and to manage our lands, resources and institutions. Aboriginal Title and Rights means we as Indian people hold Title and have the right to maintain our sacred connection to Mother Earth by governing our territories through our own forms of Government. Our Nations have a natural and rightful place within the family of nations of the world. Our political, legal, social and economic systems developed

in accordance with the laws of the Creator since time immemorial and continue to this day.

Our power to govern rests with the people and like our Aboriginal Title and Rights, it comes from within the people and cannot be taken away.[1]

2.The possessory rights claimed by respondents are federal rights to the lands at issue. Oneida Indian Nation v. County of Oneida, 414 U. S. 661, 414 U. S. 671. It has been implicitly assumed that Indians have a federal common law right to sue to enforce their aboriginal land rights, and their right of occupancy need not be based on a treaty, statute, or other Government action. Pp. 470 U. S. 233-236.

3.Merrion v. Jicarilla Apache Tribe, 455 U.S. 130 (1982) (holding that Indian Nations have the power to tax Non-Native Americans based on their power as a nation and treaty rights to exclude others;

3. The Federal Recognition rights to be assigned to The Carrizo Comecrudo Original Tribe of Texas .

_____
JUAN BENITO MANCIAS YEN NAWI'S KIAPANI'K

ABORIGINAL TITLE IN THE UNITED STATES NON INTERCOURSE

| | |
|---|---|
| JUAN BENITO MANCIAS<br>YEN NAWI'S KIAPANI'K<br>CARRIZO COMECRUDO TRIBE OF TEXAS<br>ESTO'K GNA<br>1250 Roemer Lane, Unit C<br>Floresville, TX 78114<br>      PLAINTIFF<br>VS.<br>THE FEDERAL GOVERNMENT OF THE UNTIED STATES OF AMERICA<br>      DEFENDANT | <u>ABORIGINAL TITLE IN</u><br><u>THE UNITED STATES</u><br><u>NON</u> INTERCOURSE<br>ACT OF 1793, AND OR,<br>1985 |

Tribal sovereignty in The United States is the inherent authority, of indigenous people to govern themselves within the borders of The United States, The United Sates Government recognizes Tribal Nations {Domestic Partner Nations}, and has established a number of laws attempting to clarify the relationship between The Federal , State , and Tribal Governments.

It may be noted that while Native Tribal Sovereignty is limited to the same as of, The Sovereignty of The Federal Government and the individual States, each of the will of the people underlies The Sovereignty of both The U.S. Federal Government and the States, but neither Sovereignty is absolute and each operates within a system of dual Sovereignty.

Reservation clause of the tenth amendment;

The Federal State possess only those powers delegated to it, by the power of The People, and held by the Constitution and thereto the power of

The Federal and State, resides from The People,

The Non intercourse act of 1793, and of 1985 clearly states that any and all Natives, that have obtained the knowledge of law cannot be subjected to enter into any agreement, compact, and or contract of any kind, and shall not be shown Juridical prudence therein likewise, once stated, The Federal Indian Non Intercourse Act protects only Indian Tribes or Nations, and not individual Indians and creates a trust relationship between The Federal Government and American Indian Tribes or Nations with respect to Tribal land covered by the Act. U.S.C.A. SS177.

State Courts lack subject matter jurisdiction over Native American, Indians, Nations Tribes and, group's suit claiming that its alleged descendants' sale of reservation land was void under Federal Indian Non Intercourse Act, such as the group was entitled to specific performance of the Colonial Treaty that established the reservation; proper forum for Native American to advance its claim under The Non Intercourse Act was exclusively for Federal Courts. 25 U.S.C.A. SS 177.

_____

JUAN BENITO MANCIAS YEN NAWI'S KIAPANI'K

PREFACE

The Treaty of Guadalupe Hidalgo

The Treaty of Guadalupe Hidalgo, that brought an official end to the Mexican-American War (1846-1848), was signed on February 2, 1848, at Guadalupe Hidalgo, a city north of the capital where the Mexican government had fled with the advance of U.S. forces. By its terms, Mexico ceded 55 percent of its territory, including parts of present-day Arizona, California, New Mexico, Texas, Colorado, Nevada, and Utah, to the United States. Mexico relinquished all claims to Texas, and recognized the Rio Grande as the southern boundary with the United States.